Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| LUIS PATIÑO CHIRINO<br><br>Apelada<br><br>v.<br><br>**VILLA ANTONIO BEACH RESORT, INC. H/N/C VILLA ANTONIO O PARADOR VILLA ANTONIO**, H. R. INC. H/N/C RINCÓN OF THE SEAS Y OTROS<br><br>Apelante<br><br>\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*<br>LUIS PATIÑO CHIRINO<br><br>Apelada<br><br>v.<br><br>VILLA ANTONIO BEACH RESORT, INC. H/N/C VILLA ANTONIO O PARADOR VILLA ANTONIO, H. R. INC. H/N/C RINCÓN OF THE SEAS Y OTROS<br><br>**ILIA QUIÑONES ACEVEDO**<br><br>Apelante<br><br>\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*<br>LUIS PATIÑO CHIRINO<br><br>Apelada<br><br>v.<br><br>VILLA ANTONIO BEACH RESORT, INC. H/N/C VILLA ANTONIO O PARADOR VILLA ANTONIO, **H. R. INC.** H/N/C RINCÓN OF THE SEAS Y OTROS<br><br>Apelante | KLAN202300677<br><br>Consolidado con<br><br><br>KLAN202300679<br><br><br><br><br><br><br><br><br><br><br>KLAN202300680 | Apelación Procedente del Tribunal de Primera Instancia, Sala de AGUADA<br><br>Caso Núm.: AU2019CV00066<br><br>Sobre: Fraude de Acreedores |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Número Identificador

SEN2023 _____

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de noviembre de 2023.

El 4 de agosto de 2023 Villa Antonio Beach Resort, Inc (en adelante VABR) presentó ante este Tribunal de Apelaciones un *Recurso de revisión* en el que nos solicitó la revocación de la *Sentencia Nunc Pro Tunc* emitida en la causa de epígrafe por el Tribunal de Primera Instancia, Sala de Aguada (en adelante, TPI o foro primario) con fecha del 28 de marzo de 2023, y notificada el 20 de abril del mismo año. Por virtud del aludido dictamen, el TPI declaró Con Lugar la *Demanda* instada por el Sr. Luis Patiño Chirino. En esa misma fecha, mediante el recurso KLAN202300679, compareció ante nos también la Sra. Ilia Quiñones Acevedo (en adelante, señora Quiñones) para impugnar el mismo dictamen. Similar acción tomó ese día HR, Inc. h/n/c Rincón of the Seas (en adelante, HR, Inc.) a través del recurso KLAN202300680.[1]

Examinado los distintos recursos sometidos, los argumentos en estos levantados y la transcripción del juicio en su fondo, al amparo del derecho aplicable que más adelante consignaremos, resolvemos **confirmar** la sentencia apelada.

I

Los sucesos más importantes acaecidos en el caso de autos que culminaron con la presentación de los recursos de apelación consolidados de epígrafe, según constan de los legajos apelativos, son los siguientes:

El 22 de febrero de 2019, el Sr. Luis Patiño Chirino (en adelante, señor Patiño o apelado) presentó *Demanda* por fraude de acreedores contra VABR, la señora Quiñones; y contra Arnaldo, Roberto, Orlando y Héctor Juan, todos de apellido Ruiz Quiñones, sus esposas de nombre desconocido y la

---

[1] El 11 de agosto de 2023, emitimos *Resolución* mediante la cual ordenamos la consolidación de los recursos de epígrafe.

Sociedad Legal de Gananciales que cada uno componga con sus respectivos cónyuges. Según alegado, el 6 de agosto de 2016, el apelado instó una reclamación judicial contra VABR y el Sr. Héctor Ruiz Quiñones en su carácter personal. Se señaló que sobre dicha causa de acción el apelado obtuvo una sentencia a su favor que, tras ser modificada en apelación ante el Tribunal de Apelaciones a los efectos de que la misma fuera dictada solamente contra VABR, advino a ser final y firme. También argumentó que ante la sentencia dictada inició el correspondiente procedimiento para descubrir bienes de VABR que pudieran responder por el dictamen emitido. En síntesis, alegó que los demandados habían maquinado y realizado gestiones fraudulentas con la intención de descapitalizar a VABR y así evitar satisfacer la sentencia dictada en contra de esta, transfiriendo sus activos, bienes y propiedades inmuebles a favor de HR. Inc. y la señora Quiñones.

En específico, arguyó que un bien inmueble transferido a la señora Illia Quiñones para el año 2017 se hizo de manera simulada y con el propósito de transferir la única propiedad de gran valor de VABR a favor de la mayor accionista de ambas corporaciones; o sea, de VABR y HR Inc. Como remedio, el señor Patiño solicitó que: se revirtieran todas las transacciones realizadas por VABR a favor de Illia Quiñones y H.R. Inc.; se decretara la nulidad de la escritura núm. 1 de 22 de marzo de 2017, otorgada ante el notario Juan Carlos Berríos Albino; se entregara todos los activos de VABR a favor de HR Inc., como el solar y estructura localizado en la Carr. 115 km 12, Rincón; y, se condenara a HR Inc., y a los demandados, en su carácter personal, a satisfacer las cantidades adeudadas al demandante por virtud de la sentencia dictada.[2]

---

[2] Posteriormente en el caso, el 1 de octubre de 2019, se solicitó autorización para enmendar la demanda a los fines de solicitar que se descorriera el velo corporativo, presentándose el correspondiente escrito. Tal petición de enmienda fue autorizada por el TPI el 13 de noviembre de 2019. De igual forma, luego en el caso, durante audiencia celebrada el 14 de agosto de 2020, se trajo a la atención del tribunal que según como se presentó el caso daba la impresión de que VABR y HR Inc. eran la misma parte, y no es así. Ante esto, la

El 17 de septiembre de 2019, HR Inc., contestó la Demanda. Al así hacer, negó las alegaciones allí contenidas, levantó defensas afirmativas y solicitó la desestimación de la demanda instada en su contra, alegando que la reclamación no contiene alegaciones en su contra que justifiquen la concesión de un remedio en su contra y a favor del apelado. Ese mismo día, la señora Quiñones y los codemandados de apellido Ruiz Quiñones, sus respectivas esposas y las sociedades legales gananciales que componen cada uno con estas, solicitaron la desestimación de la reclamación en su contra. Adujeron que la sentencia dictada en su día a favor del señor Patiño que este pretendía ejecutar fue emitida en contra de VABR, por lo que ninguno responde por estas.[3] Es luego de esta moción que el apelado solicita autorización para enmendar la demanda. El 13 de noviembre de 2019, ante la etapa en la que se encontraban los procedimientos, las alegaciones de fraude de acreedores y la ausencia de un examen de prueba alguna, denegó la desestimación.

Así las cosas, el 12 de abril de 2021 la señora Quiñones y los codemandados de apellido Ruiz Quiñones, sus respectivas esposas y las sociedades legales gananciales que componen cada uno con estas, sometieron *Moción de Sentencia Sumaria* en la que nuevamente reclamaron la desestimación de la demanda en su contra por dejar de exponer una reclamación que justificara la concesión de un remedio a favor del apelado y en su contra. HR Inc., también solicitó que se resolviera sumariamente y que no procedía imponerle responsabilidad por las obligaciones de VABR. El señor Patiño, por su parte, el 3 de mayo sometió una *Moción solicitando [s]e dicte sentencia sumaria a favor de la parte demandante*. Posteriormente, se

---

representación del señor Patiño informó que se enmendaría la demanda para subsanar la situación. El 18 de agosto de 2020, se sometió Segunda Demanda Enmendada a los efectos de identificar a HR Inc. h/n/c Rincón of the Seas como una entidad jurídica distinta y separada de VABR.

[3] Entrada SUMAC 25.

opuso a la solicitud de desestimación, sobre la cual las partes sometieron réplicas.

El 29 de julio de 2021, el TPI emitió *Sentencia Parcial* en la que consignó que no existía controversia sobre los siguientes hechos:

1. HR, Inc., es una corporación con fines de lucro creada y organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, el 22 de junio de 1984, registrada en el Departamento de Estado bajo el núm. 57,420.

2. La mi[s]ma se encuentra en cumplimiento con los formalismos y requerimientos establecidos por ley y opera un negocio de hotel conocido como Rincón of the Seas. Su dirección física es Carr. 115 Km. 12.5, Rincón, Puerto Rico y la postal es P.O. Box 1850, Rincón, PR 00677.

3. La codemandada Villa Antonio Beach Resort, Inc. (en adelante VABR) es una corporación con fines de lucro creada, el 22 de junio de 1984, y registrada en el Departamento de Estado del Estado Libre Asociado de Puerto Rico bajo el núm. 57,419.

4. Los demandados Héctor Ruiz Quiñones, Arnaldo Iván Ruiz Quiñones, Roberto Ruiz Quiñones, Orlando Enrique Ruiz Quiñones e Ilia María Quiñones Acevedo son accionistas de VABR y HR, Inc.

5. El 6 de agosto de 2006 el Sr. Luis Patiño Chirino presentó una querella, caso civil núm. ABCI200600755 en el Tribunal de Primera Instancia, Sala de Superior Aguada (TPI), al amparo del procedimiento sumario dispuesto en la Ley Núm. 2- 1961, según enmendada.

6. En la querella se acumularon como querellados al Parador Villa Antonio Beach Resort, Inc. y al señor Héctor Ruiz Quiñones, en su carácter personal.

7. El 28 de septiembre de 2015, archivada su notificación en autos, el 1 de octubre de 2015, el Tribunal de Primera Instancia emitió sentencia en el caso civil núm. ABCI200600755, declarando con lugar la querella presentada.

8. Como parte de la referida sentencia, el tribunal condenó a los querellados Villa Antonio Beach Resort, Inc. h/n/c Villa Antonio o Parador Villa Antonio, y a Héctor Ruiz, a satisfacer solidariamente varias partidas.

9. Inconforme, con dicha determinación la parte querellada acudió mediante recurso de apelación al Tribunal de Apelaciones. El 22 de diciembre de 2016, notificada el 28 de diciembre de 2016, el foro intermedio confirmó los remedios y las cantidades otorgadas por el TPI en contra exclusivamente de la codemandada Villa Antonio Beach Resort, Inc.

10. La querellada Villa Antonio Beach Resort, Inc. presentó un recurso de certiorari ante el Tribunal Supremo, el 27 de enero de 2017. Dicho recurso se declaró sin lugar por el Tribunal Supremo, el 23 de marzo de 2017, sin que la codemandada perdidosa hiciera gestiones ulteriores ante el máximo foro.

11. La sentencia pronunciada por el Tribunal de Apelaciones, el 22 de diciembre de 2016, advino final y firme.

12. La codemandada HR Inc. no fue parte en dicho pleito, por lo que la referida sentencia no tiene efectos en su contra.

13. El demandante presentó en el caso civil núm. ABCI200600755, una solicitud de ejecución de sentencia e inició un procedimiento para descubrir bienes de la aquí codemandada Villa Antonio Beach Resort, Inc. Ello, mediante moción presentada, el 28 de abril de 2017.

14. Como parte del referido descubrimiento de bienes, el demandante solicitó al tribunal que permitiera tomar las deposiciones a los oficiales de Villa Antonio Beach Resort, Inc., señora Illia Quiñones Acevedo y al señor Arnaldo Ruiz Quiñones.

15. El matrimonio compuesto por el señor Héctor R. Ruiz Brignoni y la señora Ilia M. Quiñones Acevedo, eran los dueños de la siguiente propiedad inmueble: Predio de terreno sito en el barrio Pueblo del término municipal de Rincón, Puerto Rico, con una cabida superficial de 5.08 cuerdas y el contiene un edificio de 55 habitaciones y una casa dedicada a vivienda, piscina y cancha de tennis.

16. El 7 de marzo de 1994, Héctor R. Ruiz Brignoni, casado con Ilia M. Quiñones Acevedo, suscribió contrato de arrendamiento a favor de Villa Antonio Beach Resort, mediante el cual, arrendó la propiedad antes mencionada, por el término de veinte 20 años, retroactivo al 1ro de julio de 1984.

17. Al fallecer el Sr. Héctor R. Ruiz Brignoni, los hijos de este (Héctor, Arnaldo Iván, Roberto y Orlando Enrique, todos de apellido Ruiz Quiñones) advinieron titulares de los referidos inmuebles a título de herencia, en comunidad con la viuda Ilia María Quiñones.

18. El 2 de julio de 2004, la sucesión de Héctor Ruiz Brignoni, representada por Ilia M. Quiñones Acevedo, renovó el contrato de arrendamiento con VABR para el alquiler de la propiedad antes descrita, la cual contenía 61 habitaciones, por un término de veinte (20) años adicionales.

19. El 30 de junio de 2017, H.R. Inc., Héctor Juan Ramón Ruiz Quiñones, Arnaldo Iván Ruiz Quiñones, Roberto Ruiz Quiñones, Orlando Enrique Ruiz Quiñones e Ilia M. Quiñones Acevedo, otorgaron la escritura pública núm. 27 sobre permuta

y asumiendo hipoteca, en Rincón, Puerto Rico, ante el notario Norma L. Díaz Serrano.

20. La codemandada HR Inc. adquirió varios bienes inmuebles de los codemandados Héctor Juan Ramón Ruiz Quiñones, Arnaldo Iván Ruiz Quiñones, Roberto Ruiz Quiñones, Orlando Enrique Ruiz Quiñones [e] Ilia M. Quiñones Acevedo, mediante la escritura pública núm. 27 sobre permuta y asumiendo hipoteca.

21. Surge de la escritura núm. 27 sobre permuta y asumiendo hipoteca, que los titulares de todos los predios y edificios que en su momento se arrendaron a VABR

22. eran Héctor Juan Ramón Ruiz Quiñones, Arnaldo Iván Ruiz Quiñones, Roberto Ruiz Quiñones, Orlando Enrique Ruiz Quiñones e Ilia María Quiñones Acevedo.

23. Los codemandados Héctor Juan Ramón Ruiz Quiñones, Arnaldo Iván Ruiz Quiñones, Roberto Ruiz Quiñones, Orlando Enrique Ruiz Quiñones adquirieron dichas propiedades de forma privativa y a título de herencia, de su fenecido padre Héctor Ramón Ruiz Brignoni, mediante la escritura núm. 262 sobre testamento abierto, otorgada en Mayagüez, Puerto Rico, el 29 de diciembre de 2001, ante el notario público Domingo F. Acevedo Bayrón.

24. Además, así surge de la escritura núm.1, sobre adjudicación de bienes en pago de participación hereditaria y cesión de derechos hereditarios otorgada en Mayagüez, Puerto Rico, el 14 de enero de 2009, ante la notaria Zoraida Del Valle Caraballo.

25. En cuanto a Ilia María Quiñones Acevedo, esta adquirió título de las propiedades, junto a su difunto esposo, Héctor Ramón Ruiz Brignoni, en virtud de compraventa.

26. HR no adquirió ningún activo de parte de VABR, incluyendo bienes tangibles o intangibles (tales como "goodwill", imagen comercial, marca, cartera de clientes, cuentas por cobrar, etc.).

27. La codemandada HR Inc. adquirió los terrenos y edificios en los que operaba el Parador Villa Antonio con el fin de rehabilitar la propiedad y hacer una expansión del Hotel Rincón of the Seas.

28. La codemandada HR Inc., no continuó el uso de la marca o imagen del negocio conocido por Parador Villa Antonio. El negocio y la imagen del Hotel Rincón of the Seas, propiedad de HR Inc., existe desde el 2003 y son distintos del negocio Parador Villa Antonio, que operaba VABR.

**29. Entre los años 2001 y 2002, VABR concedió un dinero en calidad de préstamo a favor de HR Inc., sin garantía alguna, a los fines de financiar ciertos gastos relacionados al desarrollo del Hotel Rincón of the Seas. Dicha deuda está vencida y no ha sido condonada. La misma no ha podido ser**

**pagada a VABR, toda vez que las condiciones económicas de HR Inc. se lo han impedido.** (Énfasis suplido)

30. El 9 de junio de 2017, la Sra. Marilí Rosario, directora auxiliar de la Compañía de Turismo de Puerto Rico, suspendió el endoso y beneficios promocionales del Parador Villa Antonio, toda vez que VABR cesó sus operaciones en el predio de terreno.

En virtud de estas determinaciones, el foro primario resolvió que procedía dictar sentencia sumaria parcial desestimatoria en cuanto a los codemandados en su carácter personal. Ello, basándose en que en la demanda no se alegaron actuaciones específicas y particulares que les imputaran responsabilidad a estos en su carácter personal. Asimismo, señaló que aun tomando como ciertas todas las alegaciones de la demanda, estas eran vagas e imprecisas y que, aunque el señor Patiño Chirino solicitó que se descorriera el velo corporativo, este no presentó prueba fuerte y robusta que permitiera establecer responsabilidad directa a los accionistas, en su capacidad personal. De igual manera, y en cuanto a HR INC, el TPI concluyó que también procedía dictar sentencia sumaria a su favor, ya que la propiedad inmueble que le fue transferida a HR Inc., nunca fue propiedad de Villa Antonio, ya que este la poseyó en calidad de arrendatario únicamente y no en calidad de dueño.

Inconforme con lo resuelto en ese momento, el apelado instó el recurso KLAN202100688. Tras los correspondientes trámites, un panel hermano de este Tribunal de Apelaciones emitió *Sentencia* el 29 de octubre de 2021 en la que coincidió con el foro primario en cuanto a que no existía controversia sobre los hechos consignados por el TPI, excepto del hecho número 29, arriba destacado en negrillas. Sobre este hecho en particular, se determinó que el expediente no contenía evidencia que lo sustentara, por lo que era un asunto de credibilidad que, por su naturaleza, no era susceptible de resolverse sumariamente.

De igual forma, en la antes aludida sentencia, si bien el panel colegió con el resto de los hechos, manifestó que aún persistían asuntos que tampoco podían resolverse de forma sumaria. En específico, si medió o no fraude de acreedores. Así y en cuanto a ello, se expuso como a continuación se transcribe:

En el caso ante nos, no hay duda de que la sentencia emitida el 22 de diciembre de 2016 en contra de Villa Antonio advino final y firme. Por otro lado, también es un hecho indubitado que, el 22 de marzo de 2017 se otorgó, mediante escritura pública ante notario público, un contrato sobre "permuta y asumiendo hipoteca" o "dación en pago", en la cual se transfirió la única propiedad inmueble de Villa Antonio a favor de la señora Quiñones Acevedo. Según aduce la parte apelada, dicho negocio se otorgó como pago parcial de la deuda de $252,344.21, que alegadamente existía entre Villa Antonio y la señora Quiñones Acevedo, previo a la sentencia dictada en contra de Villa Antonio. En la referida escritura pública, Villa Antonio le asignó un valor de $105,300.00 a la propiedad en cuestión. Por ello, las apeladas alegaron que aún quedaba pendiente de pago parte de la deuda. Empero, no surge de los documentos anejados a la sentencia sumaria, evidencia alguna que demuestre la existencia de la deuda original.

El otorgamiento de una escritura pública en la cual se hace constar que existía una deuda por un préstamo previo, que no consta en algún documento que sustente dicha alegación, no exime a Villa Antonio y a la señora Quiñones Acevedo, de evidenciar la aludida deuda existente. Pues como se mencionó, en ocasiones las partes otorgan este tipo de escrituras simuladas con el propósito de defraudar a sus acreedores. Es decir, no basta alegar que existe la deuda sin base alguna.

Por lo tanto, en el caso de marras, el foro primario debe evaluar la validez de la alegada deuda y determinar si esta fue, en efecto, a título oneroso, debido a una prestación previa, según alegan las partes involucradas en la escritura. En la alternativa, deberá determinar si fue a título gratuito. Como bien alegó la parte apelante, en su oposición a la moción de sentencia sumaria, no existe evidencia sobre la procedencia de la deuda, los términos de pago o repago, si medió o no condonación, si está vencida y es exigible o si está prescrita. Los antes mencionados son asuntos de credibilidad, los cuales no son susceptibles de ser resueltos por la vía sumaria. Así pues, se debe determinar si fue un contrato simulado, un contrato válido o si fue celebrado en fraude de acreedores. Una vez determinado lo anterior, el foro primario deberá evaluar si opera la presunción que contempla el Código Civil sobre fraude de acreedores y actuar de conformidad con la normativa aplicable.

Además de lo antes consignado, al atender el recurso KLAN202100688, el panel de este Tribunal de Apelaciones determinó que, aunque era claro que la sentencia cuya ejecución se busca recayó únicamente en contra de VABR, la señora Quiñones era parte indispensable

en el pleito. Asimismo, resolvió que era improcedente la desestimación contra esta y contra HR Inc; más confirmó la desestimación decretada por el TPI en cuanto a los individuos accionistas y/o oficiales demandados.

Finalmente, y tras atender varios asuntos, el juicio en su fondo se celebró los días 8 y 9 de febrero del año en curso. Desfilada la evidencia, y conforme la credibilidad que los testigos le merecieron, el 20 de abril de este año, el TPI emitió *Sentencia* en la que consignó 108 determinaciones de hechos. El 5 de mayo del año en curso, VABR, HR Inc. y la señora Quiñones solicitaron reconsideración. Habiéndose sometido la correspondiente oposición a esta petición por parte del apelado, y la correspondiente réplica por parte de VABR, el 9 de junio de 2023, notificada el día 12, el foro primario dictó la *Sentencia Nunc Pro Tunc* apelada. En esta ocasión, formuló 106 determinaciones de hechos y, en virtud de estas, así como conforme al derecho aplicable expuesto en el dictamen, el foro primario declaró Con Lugar la demanda presentada por el señor Patiño. En consecuencia, declaró nulo el traspaso del inmueble realizado por VABR a favor de la señora Quiñones mediante la escritura núm. 1 sobre dación de pago otorgada, el 22 de marzo de 2017, ante el notario Juan Carlos Berríos Albino. Del mismo modo, declaró nula la cesión de deuda que presuntamente tenía HR, Inc con VABR por la cantidad de $647,686.86 a favor de la Sra. Ilia Quiñones ($147,044.71) y a sus accionistas ($500,642.15), por haber sido otorgada en fraude de acreedores.

Consideramos importantes para atender los recursos consolidados de epígrafe las expresiones hechas por el foro primario al disponer de los asuntos ante su consideración. Por tal razón, a continuación, las transcribimos:

> Luego de un examen minucioso del derecho aplicable, los documentos que obran en autos y la credibilidad que nos merecieron los testigos, procedemos a resolver. En el caso de autos, surgió durante las vistas sobre juicio en su fondo celebradas que la presunta deuda que tenía Villa Antonio con la Sra. Ilia Quiñones no constaba en algún instrumento o pagaré, no cobraba intereses ni

tenía fecha de vencimiento. Esto, a pesar de que se trataba de una cantidad sustancial de dinero. Ante la falta de evidencia sobre la existencia de la referida deuda, es forzoso concluir que entre Villa Antonio y la señora Quiñones no existía una relación de deudor y acreedor. Más aún cuando el testimonio de la Sra. Quiñones estuvo plasmado de inconsistencias, donde no recordaba las transacciones realizadas entre Villa Antonio y esta, pero si otros asuntos que resultaban favorables para su caso. Tales como, haberse reunido junto a sus hijos, todos accionistas de las entidades corporativas demandadas, para planificar las transacciones necesarias para que se pagara la deuda de Villa Antonio. Sin embargo, durante estas reuniones no tomaron alguna medida preventiva o reserva para pagar la sentencia que pesaba en contra de Villa Antonio. Incluso, varios de los testigos negaron la existencia de la sentencia dictada en el caso civil núm. ABCI200600755 como un pasivo mayor de Villa Antonio. Específicamente, el Sr. Ruiz, actual presidente de H.R. Inc. y de Villa Antonio Beach Resort, Inc. considera que no se tenía que pagar.

En adición, surgió de los testimonios presentados que la deuda por concepto del referido dictamen judicial no fue informada en los estados financieros de los años 2016 al 2017, lo cual violenta los más elementales principios de sana administración y contaduría. Esta decisión por parte de los demandados de no incluir la referida deuda es compatible con la postura asumida por estos en cuanto a que la sentencia no tiene que ser pagada. Destacamos que, la sentencia dictada en el caso civil núm. ABCI200600755 es final, firme e inapelable. Así las cosas, cuando se otorgó la escritura pública núm. 1 sobre dación en pago a favor de la Sra. Quiñones, en la cual se traspasó el único bien de Villa Antonio sin que esta última se reservara bienes bastantes para pagar las deudas anteriores a ella, se activó la presunción de que el traspaso fue realizado en fraude de acreedores. Véase, art. 1249 del Código Civil de 1930, supra. Dicho inmueble se encuentra inscrito en el Registro de la Propiedad y cuenta con la siguiente descripción:

> RÚSTICA: Finca radicada en el Barrio Pueblo de Rincón, Puerto Rico. Compuesta de seis cuerdas con cuarenta y ocho céntimos (6.48cds), equivalente a veinticinco mil cuatrocientos sesenta y ocho metros cuadrados con nueve mil doscientos setenta y dos diez milésimas de metros cuadrados de terreno (25,468.9272 m.c.). En lindes por el NORTE, con Pedro Soto Menéndez y Colonos de Corsica Inc.; por el SUR, con Francisco Ruiz Valle; por el ESTE, Hipólito Ruiz y Sucesión José Ramos Morales y por el OESTE con Tomas Ramos Muñiz, camino vecinal que la separa de la Sucesión Juan Muñoz Carrero y Manuel López Figueroa. Contiene una casa de madera techada de zinc. Inscrita al folio 25 del tomo 85 de Rincón en el Registro de Aguadilla, finca número 408.

En lo concerniente a fraude de acreedor, es menester señalar que las transacciones conducentes a descapitalizar a Villa Antonio fueron efectuadas entre accionistas que son familiares y estas culminaron con el traspaso de los activos a su favor. A su vez, estas transacciones fueron realizadas cuando existía una sentencia final y firme en contra de Villa Antonio, y teniendo todas las partes conocimiento de la acción civil núm. ABCI200600755 desde el mismo 2006. La presunción que establece el artículo 1249 del Código Civil de 1930, supra, nunca fue derrotada por la parte demandada. Por el contrario, estos si reconocieron como un pasivo la deuda de Villa Antonio con su mayor accionista, Sra. Ilia Quiñones, y realizaron gestiones para pagarle después de dictada

la referida sentencia. La misma deuda que la parte demandada falló en demostrar que existía.

Por otro lado, surgió de la prueba presentada que el crédito que Villa Antonio tenía contra H. R. terminó como una cesión de deuda a cobrar en poder de la Sra. Ilia Quiñones y de sus hijos; es decir, los accionistas de VA y H. R. Esta deuda nunca fue cobrada, no constaba en algún documento, no generaba intereses ni tenía fecha de vencimiento. Entonces, al momento del traspaso de la propiedad en controversia también se cedió a la Sra. Ilia Quiñones un crédito a su favor por $147,044.71 a cobrar, como parte de la deuda de H. R. y la diferencia del crédito restante de $500,642.15, fue distribuido entre los accionistas de Villa Antonio como pago por aportaciones previas. Así pues, la presunta deuda se canceló en los estados financieros. Sobre este particular, surgió del testimonio del perito Mario Silvagnoli Guzmán al cual el tribunal le dio entera credibilidad que las transacciones realizadas entre la Sra. Ilia Quiñones y las entidades jurídicas Villa Antonio y H.R. Inc. se hicieron para defraudar al demandante y no satisfacer la sentencia dictada a su favor.

En su opinión, los hechos irrefutables de que en los estados financieros no se hizo constar las cantidades concedidas en la sentencia, a pesar de que para el momento era el mayor pasivo de Villa Antonio; que la cesión del crédito sustancial de Villa Antonio en contra de H. R. terminó en poder de la Sra. Ilia Quiñones y sus hijos; que la transferencia del único inmueble de Villa Antonio ocurrió a favor de la Sra. Ilia Quiñones luego de dictada la sentencia; que la declaración y concesión de dividendos por Villa Antonio en el 2017 no contenía la deuda con el demandante y, que se desaparecieran los estados financieros del crédito que tenía Villa Antonio en contra de H. R., demostraban sin duda alguna que las tales actuaciones iban dirigidas a defraudar a un tercero, en este caso al demandante. Su testimonio estuvo fundamentado en la investigación de las planillas sobre ingresos de varios años de VA, los estados financieros de 2016 y 2017, y en documentos producidos durante el procedimiento judicial. Por todo lo cual, también decretamos nula la cesión realizada a favor de la Sra. Ilia Quiñones y los accionistas de Villa Antonio para satisfacer la presunta deuda de H. R. con Villa Antonio por la cantidad de $647,686.86, por haber sido otorgada en fraude de acreedores.

En desacuerdo aun, el 4 de agosto de este año, VABR, la señora Quiñones y HR Inc., instaron los recursos de epígrafe. Así, en sus respectivos recursos señalaron que el TPI cometió los siguientes errores:

**KLAN202300677**-

Erró el TPI al dictar una sentencia determinando que las transacciones hechas por VABR fueron en fraude de acreedores sin tomar en consideración la evidencia documental y testifical sobre la condición económica de la corporación. Eso ocasiona que la sentencia del TPI sea contraria a derecho y es un abuso de la discreción del foro primario.

Erró el TPI al analizar la prueba testifical y documental sometida al punto de que la sentencia dictada prácticamente constituye una anulación de las prerrogativas de VABR como corporación y le descorre "de facto" el velo corporativo.

**KLAN202300679**-

Erró el TPI en la apreciación de la prueba y en la aplicación del derecho, al determinar que la escritura de dación en pago otorgada entre la apelante Ilia Quiñones Acevedo y Villa Antonio Beach Resort, Inc., así como la cesión del derecho de cobro de una deuda, fueron hechos en fraude del apelado, siendo esta una acreedora *bona fide,* con derecho de recobro más antiguo que el del apelante.

**KLAN202300680**-

Erró el TPI en la apreciación de la prueba y en la aplicación del derecho, al dictar sentencia contra HR, Inc. sin que la apelada presentara prueba de fraude en su contra.

Atendidos estos recursos, el 11 de agosto de 2023 ordenamos la consolidación de estos. Posteriormente, el 1 de septiembre del año en curso autorizamos la presentación de la transcripción de la regrabación de los procedimientos, así como establecimos los términos que tendrían las partes para someter sus alegatos suplementarios, así como qué plazo tendría el apelante para someter su posición al respecto.

El 2 de octubre, HR, Inc., sometió escrito mediante el cual presentó la transcripción de la prueba oral cuya transcripción había pedido se le autorizara a someter. El 16 de octubre del año en curso, el señor Patiño se opuso a la transcripción sometida por HR, Inc., por no contener la totalidad de la prueba desfilada durante el juicio. Habiéndose sometido oposición a tal objeción, mediante *Resolución* del 23 de octubre denegamos la objeción, dimos por sometida la transcripción autorizada y concedimos un término final e improrrogable al apelado para que sometiera su postura. En cumplimiento con este plazo, el 31 de octubre de 2023, el señor Patiño compareció y sometió su *Alegato de la parte apelada*. Presentado este escrito, damos por sometido el asunto y resolvemos.

II

Es sabido que la tarea principal de los tribunales apelativos es examinar cómo los tribunales inferiores aplican el derecho a los hechos particulares de cada caso. El desempeño de esta función revisora se basa en

que el Tribunal de Primera Instancia haya desarrollado un expediente completo que incluya los hechos que haya determinado ciertos según la prueba que le fue presentada. Dávila Nieves v. Meléndez Marín, 187 DPR 750 (2013). Así pues, la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, establece que las determinaciones de hechos que toma el foro primario a base de testimonio oral "no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos". De igual manera, la Regla 110 de Evidencia, 32 LPRA Ap. VI dispone que "será el juzgador de hechos quien deberá evaluar la prueba presentada con el propósito de determinar cuáles hechos fueron establecidos o demostrados".

Por razón de lo consignado en el párrafo anterior, es norma reiterada que cuando se le solicita a un foro apelativo que revise cuestiones de hechos, la apreciación de la prueba, en primera instancia, le corresponde al tribunal sentenciador ya que estos tienen la oportunidad de observar y oír a los testigos, y por ello, están en mejor posición de evaluarla. Pueblo v. Acevedo Estrada, 150 DPR 84, 98-99 (2000); López Vicil v. ITT Intermedia, Inc., 142 DPR 857, 865 (1997). En ese sentido, la evaluación del foro sentenciador merece respeto y deferencia. González Hernández v. González Hernández, 181 DPR 746, 776 (2011). Asimismo, es norma fundamental hartamente conocida que, en nuestro ordenamiento jurídico, salvo evidencia de pasión, prejuicio, parcialidad o error manifiesto los foros revisores no intervendrán con la apreciación de la prueba, la adjudicación de credibilidad o la formulación de determinaciones de hechos por parte del Tribunal de Primera Instancia. TEC General v. AEE, Opinión del 13 de octubre de 2022, 2022 TSPR 124 210 DPR ___, citando a Santiago Ortiz v. Real Legacy et al., 206 DPR 194, 219 (2021); Santiago Montañez v. Fresenius Medical, 195 DPR 476, 490 (2016); Dávila Nieves v. Meléndez Marín, *supra*.

Cónsono con ello, por lo general, "los tribunales apelativos no intervenimos ni alteramos innecesariamente las determinaciones de hechos que hayan formulado los tribunales de primera instancia luego de admitir y aquilatar la prueba presentada durante el juicio." Suárez Cáceres v. Com. Estatal Elecciones, 176 DPR 31, 65 (2009).

En cuanto a la pasión, el prejuicio o la parcialidad aludida en el párrafo anterior, es importante señalar que a diferencia de cuando alguna de esta conducta se reclama al amparo de la Regla 63 de Procedimiento Civil que rige la recusación de un juez o una juez, "la pasión, el prejuicio o la parcialidad que puede dar base a la revocación de un dictamen por un foro de mayor jerarquía no necesariamente surge de situaciones conocidas antes del juicio ni de algún conflicto individual y específico entre el adjudicador y una de las partes, sus abogados o testigos, sino que tiende a manifestarse durante el proceso mismo, particularmente, durante el juicio en los méritos." Dávila Nieves v. Meléndez Marín, *supra*, a la pág. 776. Debido a que lo que se impugna es la adjudicación de credibilidad y la determinación de los hechos, la conducta, participación y expresiones del magistrado durante el proceso judicial serán los elementos que se tomarán en consideración para evaluar si, en efecto, este incurrió en pasión, prejuicio o parcialidad. *Íd.*

Lo que constituye pasión, prejuicio o parcialidad dependerá de las circunstancias particulares de cada caso. Si la conducta del juzgador de instancia demuestra que su evaluación de la prueba y sus determinaciones de hechos fueron producto de valores, creencias, opiniones y concepciones personales ajenas al derecho, ello supone que no adjudicó la controversia con la imparcialidad, la objetividad y el desinterés que garantizan un proceso justo. En síntesis, ante una alegación de pasión, prejuicio o parcialidad, los foros apelativos debemos evaluar si el juez o la jueza cumplió su función judicial de adjudicar la controversia específica

conforme a derecho y de manera imparcial, pues solo así podremos descansar con seguridad en sus determinaciones de hechos. *Íd.*

La tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz. Gómez Márquez et al. v. El Oriental, 203 DPR 783 (2020).[4] De ahí que los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, a menos que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Íd.* Cuando la alegación es de pasión, prejuicio o parcialidad, los foros apelativos debemos verificar primordialmente si el juez de primera instancia cumplió su función de adjudicar de manera imparcial, pues solo así podremos descansar en sus determinaciones de hechos. *Íd.*

En cambio, el error manifiesto ocurre cuando, de un análisis de la totalidad de la evidencia, el tribunal apelativo queda convencido de que se cometió un error, aunque haya evidencia que sostenga las conclusiones de hecho del Tribunal. *Íd.* Este estándar de revisión restringe nuestra facultad para sustituir el criterio del foro primario a escenarios en que, de la prueba admitida, no exista base suficiente que apoye su determinación. *Íd.* Diferencias de criterio jurídico no alcanzan ese estándar. *Íd.*

-B-

En nuestro ordenamiento jurídico se sabe que "[d]el cumplimiento de las obligaciones responde el deudor con todos sus bienes presentes y futuros. Así claramente lo establece el Artículo 1811 del Código Civil de

---

[4] Citando a Dávila Nieves v. Meléndez Marín, *supra*.

1930, 31 LPRA Sec. 5171.[5] Por tal razón, el precitado código le reconoce a los acreedores que han perseguido los bienes que estén en posesión del deudor para obtener lo que se les debe el derecho a, entre otras cosas, impugnar los actos que el deudor haya realizado en fraude de su derecho. Tal reconocimiento se encuentra en las disposiciones del Artículo 1064 del Código Civil de 1930 que leen como a continuación se transcribe: "Los acreedores, después de haber perseguido los bienes de que esté en posesión el deudor para realizar cuanto se les debe, pueden ejercitar todos los derechos y acciones de éste con el mismo fin, exceptuando los que sean inherentes a su persona; pueden también impugnar los actos que el deudor haya realizado en fraude de su derecho." 31 LPRA Sec. 3028.

Es norma general que el fraude no se presume, sino que tiene que ser establecido por la parte que alega su existencia con certeza razonable, con preponderancia de prueba que satisfaga la conciencia del juzgador. Torres v. Junta Ingenieros, 161 DPR 696, 707 (2004) al citar a De Jesús Díaz v. Carrero, 112 DPR 631, 639 (1982) y otros allí citados. No obstante, el Código Civil del 1930 reconoce unas instancias en las que se presume que se celebraron en fraude de acreedores todos aquellos contratos por virtud de los cuales el deudor enajenare bienes a título gratuito. Igualmente, fraudulentas se consideran las enajenaciones a título oneroso hechas por aquellas personas contra las cuales se hubiese pronunciado antes sentencia condenatoria en cualquier instancia, o expedido mandamiento de embargo de bienes. 31 LPRA Sec. 3498.

Para derrotar la presunción de fraude de acreedores cuando el deudor enajena a título oneroso, este debe demostrar que no ocurrió la enajenación o que la misma no fue gratuita. Peña v. Mendoza, 60 DPR 110

---

[5] El 28 de noviembre de 2020, entró en vigor el nuevo Código Civil de Puerto Rico, Ley Núm. 55-2020 ("Código Civil de 2020"). Es oportuno destacar que los hechos del caso de epígrafe ocurrieron previo a la fecha de vigencia de la citada ley. Por lo cual, consideramos pertinente aclarar que las disposiciones citadas en la presente *Resolución* son aquellas del anterior Código Civil de 1930.

(1942). De otra parte, y en cuanto a las enajenaciones a título oneroso luego de haber recaído sentencia, para rebatir la presunción establecida en nuestro ordenamiento, es necesario que se ofrezca prueba del desconocimiento de la sentencia o el embargo. El acreedor impugnante, deberá demostrar la inexistencia de bienes suficientes en el patrimonio del deudor, aparte de los enajenados, para satisfacer su crédito. Velco v. Industrial Serv. Apparel, 143 DPR 243, 256 (1997).

**III**

Por medio de los recursos de apelación consolidados, cada uno de los apelantes de epígrafe impugna la apreciación de la prueba efectuada en el caso por el juzgador de hechos. Así pues, en la discusión conjunta de los dos errores señalados en el recurso **KLAN202300677**, Villa Antonio argumenta que el TPI erró concluir como hizo, sin considerar que la prueba documental y testifical que tuvo ante su consideración demostró la precaria condición económica de la empresa. También, apunta a que la apreciación efectuada por el tribunal fue una errada, que anuló sus prerrogativas y descorrió "de facto" el velo corporativo. En apoyo a estas contenciones, planteó que tal como declaró el CPA Carlos Quintana durante el juicio, Villa Antonio estaba una situación económica precaria y que por años operó con pérdidas. Asimismo, cuestionó el valor probatorio que el foro primario le asignó al hecho de que Villa Antonio y HR Inc. tienen los mismos accionistas, oficiales o directores y, afirmativamente, ripostó que en su valoración el juzgador de hechos ignoró que ambas entidades gozan de personalidad jurídica independiente.

De la misma manera, en su apelación Villa Antonio cataloga de erróneo el concluir que la dación en pago de la propiedad inmueble constituyó una actuación fraudulenta, cuando la transferencia fue producto de su autonomía corporativa y en pago de una deuda muchísimo más antigua que aquella del apelado. A tales efectos, reclama que, de los

testimonios del CPA Quintana, del Sr. Arnaldo Ruiz y aquel de la Sra. Ilia Quiñones, así como la evidencia documental, se probó que las actuaciones realizadas no eran contrarias a la Ley de Corporaciones, que no se trataron de acciones para descapitalizarle y que el apelado no derrotó la presunción de que las mismas fueron válidas y legales.

La señora Quiñones, por su parte, en el recurso **KLAN202300679** argumenta que la apreciación de la prueba efectuada por el TPI fue errónea toda vez que, basado en que durante el juicio no constaba en algún instrumento o pagaré la deuda, el foro primario concluyó que la relación entre Villa Antonio y ella no fue una de deudor y acreedor y que, por el contrario, la amplia evidencia documental evidenció que esta capitalizó a Villa Antonio desde el año 2011. Asimismo, señala que el olvido durante el juicio por su parte o de Arnaldo Ruiz de las fechas exactas en las que emitió los préstamos es irrelevante, ya que la propia sentencia lista los cheques que constituyen la deuda. Por último, añade que el CPA Quintana demostró que la deuda también fue reconocida en los libros, por lo que no podía negarse su existencia. En resumidas cuentas, mediante estos argumentos, la señora Quiñones afirma que el fraude determinado en el caso es uno contrario a la prueba desfilada que demostró que la dación en pago se realizó para pagar una deuda que Villa Antonio tenía con ella previo a que la acreencia del señor Patiño adviniera final y firme.

Por último, a través del recurso **KLAN202300680**, HR, Inc. afirma que durante el pleito no se sometió evidencia demostrativa de que incurrió en fraude y que tal hecho no surge de las determinaciones de hechos contenidas en el dictamen apelado. De la misma forma, niega responder de forma alguna al apelado, siendo Villa Antonio la deudora. Ante estos argumentos, reclama que debe revocarse la sentencia emitida en el caso y desestimarse la causa de acción en su contra.

El señor Patiño por su parte, al defender la sentencia apelada, reclama que en el presente caso se activó la presunción de fraude de acreedores toda vez que la transferencia de los activos de Villa Antonio ocurrió luego de haberse dictado una sentencia en su contra y ante la existencia de una orden de embargo de bienes. De igual manera, asevera que en la causa de epígrafe están y fueron probados los elementos que los tribunales deben justipreciar para concluir el fraude de acreedores, a saber: la festinación en la enajenación, la insolvencia del deudor; las relaciones de parentesco, intimidad o de confianza con el adquiriente, y el estado de los negocios del dueño transmitente y de las reclamaciones judiciales contra él pendientes.[6]

Según expone el señor Patiño, cada uno de estos elementos fue evidenciado con la prueba que desfiló. Así, en cuanto a la festinación, apuntó que según se evidenció, en apenas tres (3) meses los accionistas de Villa Antonio desaparecieron sus activos por la cantidad de $752,986.86, terminando estos en manos de la señora Quiñones y sus hijos; accionistas de la institución descapitalizada. Por su parte, sobre la insolvencia del deudor, destacó que la transferencia de activos- tal como probó- tuvo el efecto de dejarla insolvente, pese a que tenía a su favor un crédito contra HR, Inc. por $647,686.86 que nunca cobró.

El señor Patiño añadió a sus argumentos que también quedó evidenciada la relación de parentesco, intimidad y confianza ya que los representantes de las entidades remitentes y adquirientes eran las mismas personas. A su vez, discutió cómo su prueba, acreditó que Villa Antonio no estaba insolvente cuando transfirió sus bienes, que se había dictado sentencia en su contra y que luego de esta haberse dictado, sus oficiales implementaron un esquema fraudulento con la intención de eludir su pago

---

[6] Al así argumentar, cita la sentencia dictada por el Tribunal Supremo de Puerto Rico en el caso Flecha v. Santurce Cangrejeros, Inc., 135 DPR 851, 855 (1994).

y apropiarse de sus activos. En vista de ello, y tras señalar que los apelantes en sus respectivos escritos no demostraron error manifiesto, pasión, perjuicio o parcialidad, expusieron que la determinación de los hechos debe mantenerse inalterada, debiéndose confirmar el dictamen apelado.

Expuestos los distintos señalamientos de errores levantados por los apelantes, así como la postura del apelado, luego de evaluar el legajo apelativo y leer la transcripción de la prueba oral sometida por HR, Inc., atendemos cada uno de estos, comenzando con la imputación de error efectuada por Villa Antonio en el recurso **KLAN202300677**.

Según señalamos arriba, al impugnar la determinación apelada, Villa Antonio afirma que la apreciación de la prueba que realizó el foro primario descartó injustificadamente la prueba que sometió y demostró que funcionó con pérdidas durante años. De igual forma, alega que en su evaluación el juzgador ignoró los testimonios desfilados que probaron que la cesión en pago efectuada no tuvo el propósito de descapitalizarle para evadir responsabilidad alguna. Ahora, previo a considerar los planteamientos levantados por Villa Antonio en el recurso **KLAN202300677**, debemos referirnos a la Regla 76 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B R. 76. La misma, establece, entre otras cosas, que cuando la parte apelante señale algún error con la apreciación de la prueba testifical, deberá acreditar dentro de los diez días de la presentación de la apelación, que se propone transcribir la prueba oral, las razones por las cuales considera que la transcripción es indispensable e identificará las porciones pertinentes al récord cuya transcripción interesa. Asimismo, el inciso (B) de la discutida regla dispone que, autorizada la transcripción, el proponente podrá solicitar al Tribunal de Primera Instancia la regrabación de los procedimientos.

Aunque los errores señalados y discutidos por Villa Antonio buscan impugnar la apreciación de la prueba efectuada por el foro primario, así

como el valor probatorio que dio a ciertos hechos, luego de haber sometido su apelación, dicha parte no cumplió con la disposición reglamentaria señalada en el párrafo anterior. Dentro de los diez días subsiguientes a la presentación de su apelación, Villa Antonio no sometió moción ante este Tribunal mediante la cual anunciara su intención de reproducir la prueba. Esto, causa que no estemos en posición de ponderar adecuadamente aquellas instancias en sus argumentos en los que alude a lo probado por la prueba testifical desfilada durante el juicio.

Si bien contamos con una transcripción de los procedimientos, la misma fue solicitada y tramitada por HR, Inc., y solamente contiene las porciones del récord relativas a la prueba testifical desfilada por el señor Patiño durante el juicio, hasta que este sometió su caso. Es decir, **el testimonio del CPA Quintana no forma parte de la transcripción de la prueba oral sometida en el caso ante nuestra consideración.** Ello, según dijimos, causa que para resolver los señalamientos de error que levanta ante nos, nuestro análisis se limite a aquellos testimonios reproducidos en la transcripción sometida por HR, Inc., o a la prueba documental que consta en el expediente judicial.  Así hecho, tras haber estudiado minuciosamente la misma y haber sopesado los argumentos levantados por Villa Antonio en el recurso **KLAN202300677** no encontramos razones por las que debamos intervenir con la apreciación de la prueba efectuada por el foro primario, así como el valor probatorio que el TPI concedió esta. Veamos.

A la luz de las expresiones consignadas en la sentencia apelada- que transcribimos en la exposición del tracto procesal- no hay duda de que el foro primario encontró que el señor Patiño Chirino estableció un caso *prima facie* de nulidad de actuaciones y presunción de fraude de acreedores que transfirió el peso de la prueba a los apelantes de epígrafe.  Así directamente

lo señala en la página 19 del dictamen.[7] Conforme se aprecia de tales manifestaciones, las circunstancias y hechos que a su juicio activaron la presunción y evidenciaron la conducta fraudulenta de intentar eludir el deber jurídico de pagar lo debido al apelado por vía de transferencias revestidas de legalidad, son las siguientes:

    a. La falta de un documento en el que de una forma u otra se hiciera constar los términos de un alegado préstamo cuya cantidad es sin lugar a duda sustancial;

    b. la falta de gestión de cobro por años por parte de la señora Quiñones de la alegada deuda;

    c. la ausencia de una medida preventiva o reserva para pagar la sentencia que había sido emitida;

    d. la negativa de los testigos a reconocer la sentencia emitida a favor del señor Patiño Chirino como un pasivo mayor de Villa Antonio;

    e. el hecho de que la deuda en concepto de la sentencia dictada contra Villa Antonio no se incluyera en los estados financieros de los años 2016 al 2017;

    f. la dación en pago hecha por Villa Antonio del único bien que le pertenecía a favor de la señora Quiñones cuando ya se había dictado sentencia en su contra; y

    g. las transacciones efectuadas por los accionistas de Villa Antonio- quienes son familiares entre sí- para transferir a su nombre el crédito que tal empresa tenía a su favor y en contra de HR, Inc., como pago de una alegada deuda que nunca anteriormente había sido cobrada y la cual carece de documentación que la sustente.

Cada una de las instancias apreciadas por el foro primario surge de la prueba testifical sometida por el apelado durante su turno de prueba en el juicio, cuya reproducción mediante transcripción estudiamos minuciosamente para atender los diferentes recursos de epígrafe. De otra parte, observamos que la presunción decretada en el caso en cuanto a que las transacciones realizadas entre la Sra. Ilia Quiñones y las entidades jurídicas Villa Antonio y HR, Inc., se hicieron en fraude del apelado, se apoya en la opinión brindada durante su testimonio por el perito del

---

[7] En esta, enuncia que "[l]a presunción que establece el artículo 1249 del Código Civil de 1930, *supra,* nunca fue derrotada por la parte demandada.".

apelado, Mario Silvagnoli Guzmán (Silvagnoli). Este testigo, según manifestado, le mereció entera credibilidad.[8]

En el juicio celebrado, Silvagnoli declaró que con respecto a la investigación que hizo para el caso, concluyó que hubo fraude al señor Luis Patiño como acreedor de la entidad Villa Antonio.[9] Así, conforme declaró Silvagnoli, la nota C del estado financiero de Villa Antonio del 30 de junio de 2016, Villa Antonio tenía una cuenta a cobrar a HR, Inc. de $647,768.00; que conforme la nota, dicha acreencia no devengaba intereses, ni tenía fecha de vencimiento; que conforme el estado financiero los activos de Villa Antonio superaban sus pasivos; que en el mismo no había anotación alguna sobre la sentencia que el TPI había dictado contra Villa Antonio y a favor del apelado; y que divulgar al menos un estimado de la sentencia dictada en contra de la empresa en sus estados financieros, es la mejor práctica.[10] En cuanto a este estado financiero, durante su declaración, Silvagnoli opinó que las cantidades concedidas a favor del apelado y contra Villa Antonio eran trascendentales, entre otras razones, porque de haberse reconocido las partidas, la ganancia reportada se hubiera revertido a un déficit acumulado, lo que impediría la emisión de dividendos a favor de los accionistas.[11]

Igualmente, y en cuanto al estado financiero hasta el 30 de junio de 2017, señaló que hubo una reducción sustancial a los activos corrientes, que incluían cuentas por cobrar y que ello pudiera ser porque estas se cobraron. Particularmente, señaló que la cuenta por cobrar de Villa Antonio a HR, Inc. fue eliminada o no aparece, como si se hubiera cobrado; explicó que la única manera en que eso puede eliminarse en los libros de contabilidad es porque se cobró o hubo una condonación, información que no está divulgada en los estados financieros; y opinó que buscando la definición de lo que

---

[8] Véase págs. 95-96 del Apéndice del recurso **KLAN202300677**.
[9] Véase, Transcripción de Juicio del 9 de febrero de 2023, págs. 17-18.
[10] *Íd*., págs. 24-31
[11] *Íd*., págs. 34-35.

constituye fraude, el propósito de haber eliminado dicha partida fue para no pagarla.[12]

Ninguno de los testimonios reproducidos ante este tribunal a los fines de atacar la apreciación de prueba rebate las conclusiones alcanzadas por el TPI apoyadas en el testimonio del perito del apelado, Mario Silvagnoli Guzmán. La mera alusión al testimonio del CPA Carlos Quintana, sin que su testimonio hubiera sido reproducido, no es suficiente en derecho para derrotarlas y mucho menos para que descartemos el valor probatorio que el foro primario le atribuyó. Desconocemos, por no habérsenos colocado en posición de conocer, cuál fue el contenido específico del testimonio del CPA Carlos Quintana en favor de Villa Antonio. Específicamente, ignoramos qué este declaró en cuanto a la situación económica de Villa Antonio, la explicación brindada, si alguna, a los señalamientos que Silvagnoli hiciera sobre los estados financieros preparados y los argumentos levantados para refutar la conclusión de fraude emitida por Silvagnoli, así como cualquier otra declaración que hubiera podido hacer el CPA Quintana en defensa de sus clientes. Ciertamente, la falta de reproducción de la prueba oral sometida por Villa Antonio durante el juicio incide en nuestra función revisora, por carecer de los elementos básicos necesarios que nos permita descartar la apreciación realizada por el TPI. En consecuencia, resolvemos que los errores señalados por Villa Antonio en el recurso **KLAN202300677** no se cometieron.

Similar conclusión alcanzamos sobre el señalamiento de error levantado por la señora Quiñones en la apelación **KLAN202300679.** En los argumentos levantados ante nos, según arriba explicamos, en síntesis, esta argumenta que el TPI se equivocó al no reconocer la deuda que Villa Antonio tenía para con ella, toda vez que del expediente judicial surge copia de los cheques que emitió para capitalizar a Villa Antonio. Aduce que tal

---

[12] *Íd.* págs. 38-44.

evidencia demostró la existencia de una acreencia a su favor con mayor antigüedad que la del apelado, por lo que no podía concluirse fraude de acreedores al cobrar una deuda válida. Así, al señalar específicamente alguna de las determinaciones de hechos formuladas por el foro primario, asevera que los cheques emitidos por ella se identificaban como préstamo y que, al distinguirlo de esa manera de otros pagos, se demostraba su intención de recobro de la deuda. Además de esto, y a los fines de fortalecer su argumento, la señora Quiñones afirmó en su recurso que durante el juicio se demostró que esta deuda fue reconocida en los libros de contabilidad de Villa Antonio, por lo que fue erróneo el concluir que esta no existía.

Es correcto que, del expediente judicial surgen unos estados bancarios que contienen copia de varios cheques emitidos por la señora Quiñones, a nombre de Villa Antonio que se identifican como préstamo. Sin embargo, la mera existencia de estos cheques- sin prueba adicional- es insuficiente para derrotar la evaluación que el juzgador de hechos hizo sobre la **totalidad** de la prueba desfilada en el caso. Meras alegaciones no constituyen prueba.

Si bien es cierto que, como regla general, este Tribunal de Apelaciones está en igual posición que el TPI para evaluar la prueba admitida como evidencia, cuando junto a tal evaluación se nos pide que sopesemos elementos de credibilidad, indudablemente debemos conceder deferencia al juzgador de hechos respecto a tales asuntos. Al final de cuenta, fue quien tuvo oportunidad de observar el comportamiento de los testigos en sala. Dentro de la evidencia evaluada por el juez en el caso, se encontró el testimonio en sala de la señora Quiñones. Escuchada su declaración- la cual según consignó no le pareció confiable por parecerle inconsistente- el foro primario no encontró probado que la relación entre Villa Antonio y ella fuera realmente una de deudor y acreedor.

No se presentaron argumentos u otra evidencia que nos muevan a intervenir con tal apreciación. Asimismo, la falta de reproducción del testimonio del CPA Quintana señalada al disponer del recurso **KLAN202300677**, impide que conozcamos y podamos evaluar cualquier evidencia supuestamente sometida mediante su testimonio para acreditar el reconocimiento en los libros de contabilidad de la deuda. Por tanto, toda alusión efectuada por la señora Quiñones en su escrito de apelación al testimonio del CPA Quintana no puede ser considerada.

La apreciación del fraude, como cuestión de hecho, es una facultad de la sala sentenciadora. De Jesús Díaz, v. Carrero, *supra*, al citar a Derecho Civil Español, 10ma ed., 1967, T. 3, pág. 238. Por su parte, y como es harto conocido, para poder revocar las determinaciones de hechos realizadas por el TPI, la parte que las cuestione deberá demostrarnos y fundamentar que medió pasión, prejuicio, parcialidad o error manifiesto por el juzgador. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884 (2016); Dávila Nieves v. Meléndez Marín, *supra*. Los argumentos levantados por la señora Quiñones- al igual que ocurrió con aquellos sometidos por Villa Antonio- fallan en demostrar la presencia de las mencionadas instancias. Peor aún, estos pretenden que sustituyamos el juicio de valoración de la prueba documental y testifical que el TPI realizó, basados en meros documentos y sin siquiera reproducir la prueba testifical que alega derrota la determinación de inexistencia de una relación entre deudor y acreedor entre Villa Antonio y ella. Por tanto, no intervendremos con esta.

Atendemos ahora los planteamientos levantados por HR, Inc. en el recurso **KLAN202300680**. En este, como hemos dicho, señala que la sentencia dictada en el pleito no contiene determinación de actuación alguna de su parte que constituya fraude de acreedores contra el apelado por lo que debió desestimarse la demanda en su contra. Así, señala que de las determinaciones de hechos formuladas por el foro primario se

desprende que hace negocios bajo el nombre comercial de Rincón of the Seas; que en el año 2017 advino a ser dueña de la estructura donde Villa Antonio operó su negocio que le pertenecía a la señora Quiñones y sus hijos en carácter personal; que en el 2016 adeudaba $648,686.86 a Villa Antonio; que parte de dicha deuda le fue cedida a la señora Quiñones en pago a una acreencia; que nunca adquirió bienes de Villa Antonio y que Rincón of the Seas y Parador Villa Antonio eran dos negocios distintos y aparte. Basándose en ello, afirma que no existe evidencia constitutiva de fraude por su parte por lo que la sentencia debe ser revocada en cuanto a HR, Inc.

Al comenzar con la discusión de su error HR, Inc., tras aseverar que no se sometió evidencia alguna de fraude por su parte, afirma que la causa de acción en su contra "debió haber sido desestimada, como fue suplicado al TPI, en vez de mantenerlo en un pleito, **en donde la sentencia resulta inconsecuente para HR.**"[13] Vemos pues, que, a pesar de reconocer que el dictamen que apela carece de consecuencia en su contra, HR, Inc., peticiona que lo revoquemos. Ahora, por las razones que brindamos al atender los recursos **KLAN202300677** y **KLAN202300679**, la sentencia emitida en el caso está siendo confirmada.

Cabe señalar que, durante el pleito, HR, Inc. había solicitado que el TPI resolviera sumariamente a su favor la desestimación de la demanda instada por el apelado. De hecho, el foro primario concedió esta petición. Sin embargo, en revisión judicial la desestimación concedida fue revocada. En dicha ocasión se resolvió que la existencia de fraude por parte de cada una de las demandadas, HR, Inc., inclusive, era un asunto de credibilidad que debía ser dirimido mediante la celebración de un juicio en su fondo. Entonces, permitir la continuación del pleito contra HR, Inc., hasta la etapa del juicio en su fondo no respondió a un capricho del tribunal de mantener a una parte en un pleito sin razón en derecho alguno para así hacerlo, como

---

[13] Véase página 4, párrafo 2 del recurso **KLAN202300680**.

parece sugerir HR, Inc. Por el contrario, dada las alegaciones específicas levantadas en la demanda, era lo procedente en el momento en el caso en que la desestimación sumaria fue solicitada.

De otro lado, la ausencia de una determinación de hechos sobre fraude específica contra HR, Inc., luego de haberse celebrado el juicio, no es suficiente para que la sentencia emitida sea revocada. Al fin de cuentas, como mismo señala HR, Inc., tal dictamen no concede un remedio específico a favor del apelante y en su contra. Por el contrario, el dictamen apelado se limita a revertir la dación en pago realizada por Villa Antonio mediante la escritura núm. 1 sobre dación de pago otorgada, el 22 de marzo de 2017, ante el notario Juan Carlos Berríos Albino, así como la cesión de la deuda que hicieran los accionistas de Villa Antonio a favor de la Sra. Ilia Quiñones por $147,044.71 y en favor de ellos mismos por $500,642.15, de aquella acreencia que alegadamente HR, Inc. tenía con Villa Antonio por la cantidad de $647,686.86.[14]

IV

Por virtud de lo antes expuesto, confirmamos la *Sentencia Nunc Pro Tunc* emitida en la causa de epígrafe por el Tribunal de Primera Instancia, Sala de Aguada con fecha del 28 de marzo de 2023.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[14] Nótese que, si bien en la demanda de autos el apelado solicitó que se le concediera una compensación monetaria por aquellas angustias mentales y daños y perjuicios alegadamente sufridos por él a consecuencia de los actos fraudulentos de las partes demandadas, el foro primario nada dispuso sobre esta petición, limitándose a revertir los negocios jurídicos señalados.